## EDNA C. DUETSCH v. E. L. MURPHY TRUCKING COMPANY AND ANOTHER.

239 N. W. 2d 462.

February 20, 1976—No. 45410.

*Gislason, Alsop, Dosland & Hunter* and *Robert M. Halvorson,* for relator.

*Van Eps, Gilmore & Chantry* and *Curtis C. Gilmore,* for respondents.

Heard before Sheran, C. J., and Rogosheske and Scott, JJ., and considered and decided by the court en banc.

SCOTT, JUSTICE.

This case is before us on a writ of certiorari sought by the widow of George Duetsch. The Workers' Compensation Board affirmed the decision of the compensation judge denying com-

pensation for injuries sustained by her husband which subsequently caused his death.

George Duetsch and E. L. Murphy Trucking Company entered into a lease agreement on February 10, 1972. Duetsch agreed to lease one tractor and one trailer to Murphy for a year. On April 24, 1972, while repairing the tractor, Duetsch suffered severe burns which subsequently caused his death.

The contract provided in paragraph 1:

"The Contractor shall, when requested by the Carrier, haul such commodities as may be provided by the Carrier from time to time. In hauling such commodities for the Carrier, the Contractor shall utilize only the equipment which [is] more particularly described in Exhibit A hereto or which may be provided by the Carrier. Contractor shall haul such commodities in accordance with the requests made to the Carrier by the shipper or consignee. During the term of this contract, the equipment described in Exhibit A hereto, or which may be provided by the Carrier, shall be in the exclusive possession, control and use of the Carrier, subject only to paragraph 9 of this contract."

Paragraph 4 provided:

"During the existence of the Contract, the Carrier shall exert every reasonable effort to provide the Contractor as substantial a volume of commodities for hauling as is possible and Contractor shall utilize the equipment described in Exhibit A only for the hauling of commodities provided by the Carrier."

Paragraph 6 provided in part:

"The Contractor shall pay all costs and expenses incident to the performance of this contract, including all operating and maintenance costs for the equipment described in Exhibit A and [used] in said performance, * * *."

And paragraph 9 provided in part:

"* * * The public liability and property damage insurance provided by the Carrier as provided in paragraph 7 hereof will

be for the benefit and protection of third persons only and shall be in effect only when the equipment furnished by the Contractor is being operated in the exclusive service of the Carrier and while actually engaged in the actual transportation or under specific instructions or dispatch orders of the Carrier. Such coverage will not apply while said equipment is being used in any way by the Contractor or its employes for any personal use or private transportation such as, but not limited to, traveling to and from work, traveling to and from maintenance and repair sites, dining spots, etc. Contractor agrees to furnish his own insurance, commonly known as 'bobtail' insurance, to cover such operations and hold the Carrier harmless from any claims whatsoever and without limitation, which might arise as a result of such operations."

On the Friday prior to the accident, Duetsch sent Roger Ockwig with the tractor-trailer unit to Hamel, Minnesota, to pick up a load pursuant to instructions from Murphy. Duetsch had hired Ockwig with Murphy's approval to help him in driving the truck for Murphy. Ockwig left the trailer at the Hamel site when informed that the load could not be completed that day. Ockwig returned the tractor to Duetsch's garage in New Ulm, where Duetsch had facilities for maintenance and repair of his own equipment and from which location he operated his own trucking business. Upon learning that the Hamel load would not be ready until Tuesday, Duetsch began to repair the tractor's spring system. Ockwig helped him in this project. Duetsch was grinding a bolt for the spring when a spark fell into a pail of solvent and ignited it. When Duetsch took the pail outside his garage, he was burned.

The only issue involved is whether Duetsch's injuries and subsequent death arose out of and in the course of employment within the meaning of the Workers' Compensation Act, or whether he was acting as an independent contractor at the time.

In Tretter v. Dart Transit Co. 271 Minn. 131, 135 N. W. 2d 484 (1965), the criteria for determining whether an individual

is an employee or an independent contractor were stated by this court. Usually, the factors to be considered are:

(1) The right to control the means and manner of performance;

(2) The mode of payment;

(3) The furnishing of materials and tools for the work;

(4) The control of the premises where the work is done;

(5) The right of the employer to discharge.

The most important of these factors is the right of the employer to control the mode and manner of performance. Hammes v. Suk, 291 Minn. 233, 190 N. W. 2d 478 (1971).

Relator argues that paragraphs 1 and 4 of the contract gave Murphy the right to control details of the work performed under the lease agreement. Relator argues also that certain work rules and procedures issued to Duetsch by Murphy further eliminated any discretion by Duetsch in the manner of his performance. Those rules relate to the purchase of repair items for company-owned trailers, maintenance requirements, and operating procedures. Neither the contract clauses cited nor the work rules controlled the manner in which Duetsch was to repair his tractor-trailer, however. Duetsch contracted to assume all operating and maintenance costs. Murphy did not furnish either tools or premises for the repair. Murphy did not pay Duetsch for repairing the truck. The insurance liability assumed by Murphy in the contract with Duetsch specifically excluded maintenance and repair.

The facts of Tretter v. Dart Transit Co. *supra,* are similar to the instant situation in several respects. In Tretter, decedent was the owner and operator of a tractor that was leased to Dart Transit Company. Decedent contracted to pay for all repairs and was paid on a percentage-of-revenue basis. Decedent was killed while pulling a Dart trailer with a leased tractor. He had been free to drive the tractor himself or to furnish other drivers. This court found that plaintiff was an independent contractor without the protection of workers' compensation. We noted:

"* * * This situation results from the nature of his independ-

ent activity. It would appear that the relationship entails mutual advantages for the independent tractor owner and the transportation company which uses his services. The company is spared investment in expensive equipment and the cost of its maintenance and is relieved from management-labor problems, as well as other expenses which the employer-employee relationship involves. The tractor owner, on the other hand, provides the equipment which he owns and manages. * * * If the parties wish to contract on this basis, we know of no authority which stands in their way. We can only say that each case must be determined on its own facts, and where as here it cannot be said that the lease is merely an arrangement to conceal the true nature of the relationship between the parties, we must affirm." 271 Minn. 138, 135 N. W. 2d 488.

The Tretter case is distinguishable in that Dart Transit did not withhold income and social security taxes and did not have the right to fire drivers of the leased truck. While these factors are relevant, they are not determinative of the question of independent contractor status. In the present case the parties plainly have contracted to make repairs the responsibility of Duetsch. The only control that Murphy had over the maintenance was the right to monthly inspections.

The cases cited by the petitioner are inapposite. Snyder v. General Paper Corp. 277 Minn. 376, 152 N. W. 2d 743 (1967), involved an employee who choked to death at a business dinner. Epp v. Midwestern Machinery Co. 296 Minn. 231, 208 N. W. 2d 87 (1973), involved an employee truckdriver who was killed while crossing a street during a required layover on route. Sandmeyer v. City of Bemidji, 281 Minn. 217, 161 N. W. 2d 318 (1968), involved an off-duty policeman who was killed while target shooting. None of these cases involved the distinction between employee and independent contractor. The repair work in which Duetsch was engaged was not an incident of an employment contract, but rather a responsibility of Duetsch as lessor. While Murphy may have received some benefit from Duetsch's

repairs, this is not the test where the lessor has agreed to be responsible for maintenance.[1]

It is immaterial what relationship might have been present had the accident happened while Duetsch was out on the road. The question is whether he was in the course of employment at the time of this accident. It is clear, under all the facts and circumstances of this case, that his injuries arose out of his acts as an independent contractor. We hold that the board's findings were correct.

Affirmed.

---

[1] The Wisconsin case cited by appellant for the benefits test involved a different workers' compensation statute. Employers Mutual Lia. Ins. Co. v. Dept. of Industry, Labor & Human Relations, 52 Wis. 2d 515, 190 N. W. 2d 907 (1971). In Wisconsin an independent contractor can still be considered an employee unless he maintains a separate business, holds himself out to and renders services to the public, or is himself an employer subject to the Wisconsin Compensation Act. Wis. Stat. 1973, § 102.07(8).