**John J. ALEXANDER,**
**Respondent-Relator,**

v.

**KENNETH R. LaLONDE ENTERPRIS-**
**ES, et al., Relators-Respondents.**

Nos. 48291, 48298.

Supreme Court of Minnesota.

Jan. 18, 1980.

Scholle & Scholle, Leslie C. Scholle and Scott W. Stevenson, Minneapolis, for relators-respondents.

Robert R. Johnson, Minneapolis, for respondent-relator.

Heard before PETERSON, YETKA, and WAHL, JJ., and considered and decided by the court en banc.

PETERSON, Justice.

The Workers' Compensation Court of Appeals, upon application of petitioner-employee, vacated an award of 7 years' standing for nursing services provided to petitioner by his wife and increased the amount of the award. Relator-employer contends that the vacation of the award was barred by principles of res judicata and was an abuse of discretion. Both relator and cross-appealing petitioner contend that the amount thereafter awarded is not supported by the evidence. On the basis of the unique circumstances of this case, we affirm.

An order of a compensation judge, filed February 21, 1969, and affirmed by the then Workers' Compensation Commission on October 16, 1969, awarded petitioner $30 per week as reimbursement for nursing services provided him by his wife. The value of the nursing services at that time was based upon a stipulation of counsel, the unusual circumstances of which are the basis for our affirmance.

The petition to vacate the original award and to order a new award was initiated on September 20, 1976. The Workers' Compensation Court of Appeals vacated the award to the date of the petition and remanded the matter to a compensation judge for hearing. The judge awarded $190.96 per week for nursing services, effective the same date. The court of appeals increased the award to $210 per week.

1. At the original hearing in 1968, petitioner's then attorney failed to make a claim for the value of nursing services provided by the wife of this totally and permanently disabled petitioner but subsequently did so upon the advice of the compensation judge. Because the attorney was not at that point prepared to put in proof of nursing services performed by petitioner's wife, the judge granted a 30-day extension for the attorney to investigate and ascertain the reasonable value of such nursing services. At the resumed hearing, the attorney and opposing counsel stipulated that the reasonable value of the nursing services was $30 per week.

By affidavit in the 1976 vacation proceedings, credited by the court of appeals, petitioner and his wife stated that their former attorney neither before nor after the hearing consulted with them concerning the nature and value of the services performed by petitioner's wife, having simply told them that petitioner would receive $30 per week.[1]

1. We learned upon relator's petition for reargument that this affidavit was not before the court of appeals at the time of its decision, and for that reason, we vacated our opinion of March 16, 1979, and remanded to the court of appeals to afford relators an opportunity to adduce direct evidence concerning the circumstances under which the stipulation was made.

The former attorney was deposed, and upon deposition, the court of appeals found that the attorney "did not inquire of either the husband or wife nor put into the record evidence of the reasonable value of nursing services, but made his own arbitrary determination thereof and stipulated same into the record." It added, by memorandum, that the attorney "merely con-

The court of appeals could now well conclude that, through no fault of petitioner, the nominal amount of the original award was not based upon an informed stipulation.

At the 1976 hearing, however, the wife gave a detailed account of the tasks she has been performing since her husband's injury in May 1968. Petitioner can do little for himself; so, during a typical day, his wife undresses him, bathes him, washes his hair, helps him brush and clean his dentures, serves him meals on a tray, cuts his food and aids in feeding him, helps him out of chairs and into and out of automobiles, affixes his leg brace, places a splint on his hand 10 to 12 times a day, and exercises his arm and leg. Petitioner must frequently use the bathroom, both during the day and during the night, and his wife must assist him in getting out of bed, walking to the bathroom, and going back to bed, where he must be placed in a certain position in the bed in order to sleep. As a result of this need for nighttime assistance, petitioner's wife averages 4 hours of interrupted sleep.

Minn.St. 176.461 authorizes the court of appeals to set aside an award and grant a new hearing "for cause." There are usually only four general categories of cases where cause for setting aside an award may be found: Fraud, mistake, newly discovered evidence, or a substantial change in the employee's condition. *Lubinski v. Bros, Inc.*, 270 N.W.2d 874 (Minn. 1978). Principles of res judicata otherwise bar subsequent proceedings to determine claims which were litigated in a prior proceeding. Although the circumstances in this case do not fit precisely into any of these usual categories, the unusual facts in this case at the least indicate that through no fault of petitioner's the issue of compensation for nursing services was never considered in the original hearing. The commission, then, did not abuse its considerable discretion in vacating the original award. *Walker v. Midwest Foods*, 293 Minn. 460, 197 N.W.2d 430 (1972); *Mattson v. Abate*, 279 Minn. 287, 156 N.W.2d 738 (1968).

2. We turn then to the factual issue of the reasonable value of the nursing services provided by petitioner's wife, as determined by the Workers' Compensation Court of Appeals pursuant to Minn.St. 176.135, subd. 1, which, in part, provides:

"* * * The employer shall pay for the *reasonable value of nursing services* by a member of the employee's family in cases of permanent total disability." (Italics supplied.)

The nature of the nursing services performed has previously been stated. Competent testimony and documentary evidence indicated that the services provided by petitioner's wife, if not performed by her, would otherwise be performed by a nonprofessional nurse's assistant. The value placed upon these services by the court of appeals was apparently based upon a rate of $3.75 per hour for an 8-hour workday, the beginning wage rate of a licensed practical nurse in local area hospitals.[2]

Relator contends that the award is excessive as a matter of law on the ground that petitioner's wife is not a regular nurse's assistant or a licensed practical nurse and, in any event, is not performing the work of a licensed practical nurse.[3] Relator suggests no other yardstick for ascertaining the value of such services, however, except to suggest that the original award might be adjusted for the decrease in the value of money since 1969. Petitioner, while accepting the yardstick of the court

---

sidered in negotiations with the opposing counsel what he felt he could get in view of the case overall and stipulated the $30.00 figure." These findings are supported in the deposition, and upon our own examination of the deposition, we conclude that the sentence to which this footnote is appended is substantially correct.

2. The compensation judge in awarding $190.96 per week for nursing services in effect included

$3.41 per hour for an 8-hour day, the wage rate of the most experienced nurse's assistant in St. Paul's Midway Hospital. The court of appeals' award, as noted in the text of this opinion, was predicated upon a wage rate for a licensed practical nurse.

3. The job descriptions of a nurse's assistant and a licensed practical nurse overlap in many details, with the ability of the latter to give medication being an important difference.

of appeals, contends that it is deficient to the extent it does not compensate for services on a 24-hour, rather than an 8-hour, basis. We reject the contentions of both parties.

The yardstick used by the court of appeals is, to be sure, inexact and at best achieves a reasonable approximation of value in any case. We think it reaches a permissible balance among the similarities and dissimilarities in the stated occupations. The qualifications and conditions of nonprofessional nursing classifications in hospitals are not automatically to be applied to services performed by an injured employee's wife. Petitioner's wife was trained at the Kenny Institute to perform some of the tasks she does for her husband, but she has never had formal training as a nurse's assistant and is not licensed as a practical nurse. The testimony by witnesses for both sides established that petitioner does not need the services of a regular nurse's assistant or a licensed practical nurse, but the testimony established the need for services of a kind performed by his wife. Dr. Theodore M. Cole, a specialist in physical medicine and rehabilitation, opined that petitioner cannot function independently and safely without constant supervision on a 24-hour basis and that the care given petitioner is detailed, sensitive, and available at virtually any time of the day or night. Mary Jo Towle, a registered nurse, testified that petitioner needs someone available to him 24 hours per day, although not necessarily someone always at his side. Nurses' assistants are supervised, yet petitioner's wife is performing her tasks without supervision. Although compensation equal to that of a licensed practical nurse may otherwise seem to be on the higher limit of comparison, it should be noted that only hourly wage rates, exclusive of substantial "fringe benefits," were used as a measurement.

Although the foregoing recital reasonably supports use by the court of appeals of the wage rate of either a nurse's assistant or a licensed practical nurse as a basis for valuing the nursing services of petitioner's wife, other considerations militate against the even larger claim of petitioner. The services of petitioner's wife are not full time, and some of her services are attributable to the marital status itself. An institutional nurse's assistant or a licensed practical nurse has a different status, with constant duty during the regular workday, in which services are performed for numerous patients. Under all the circumstances, the court of appeals was not obliged to order reimbursement for services on a 24-hour basis.

A determination of what are "nursing services" and what is the "reasonable value" of such services is, in sum, a question of fact to be determined by the informed practical judgment of the court of appeals. Its finding on an issue of fact will not be disturbed unless it is manifestly contrary to the evidence or unless consideration of the evidence and the inferences permissible therefrom require reasonable minds to adopt a contrary conclusion. *Marsden v. Village of Mabel,* 253 N.W.2d 275 (Minn. 1977).

Having retained jurisdiction pending further proceedings and a final determination of an issue discussed in footnote 1, *supra,* the original opinion of March 16, 1979, is reissued and reinstated as herein supplemented.

Petitioner is allowed $350 attorneys fees on this appeal.

Affirmed.